THOUSAND ISLAND PARK ASSOCIATION, Respondent, *v.* ORA TUCKER, Appellant.

1. HIGHWAYS — WHAT CONSTITUTES DEDICATION OF LANDS OF RESIDENCE PARK ASSOCIATION — TRESPASS. The leasing for a long term of years of lots laid out on a map or plan of lands of a camp meeting and summer residence park association, showing such lots and the roads and streets to be used for access thereto, constitutes a dedication of the land in such streets and roads to the use of the lot lessees, and the association cannot maintain an action of trespass against a person using a road for access to the premises of a lessee for the purpose of delivering merchandise and supplies to the lessee at his request.

2. RESIDENCE PARK ASSOCIATION — STATUTE AUTHORIZING ASSOCIA-
TION TO ESTABLISH RULES REGULATING TRADE UPON GROUNDS THEREOF
DOES NOT AUTHORIZE A MONOPOLY.    A statute (L. 1883, ch. 278) author-
izing such association to purchase and deal in provisions and other com-
modities for supplying lessees and visitors and to maintain stores and
shops for that purpose and empowering the association to authorize others
to engage in such pursuits in the park, and to make and maintain regula-
tions therefor, cannot be construed so as to give the association, its agents
or licensees, the exclusive privilege of dealing in merchandise and supplies
within the limits of the park, since the power to regulate does not
authorize the creation of a monopoly.

3. RESERVATION OF POWER TO REGULATE CONTEMPLATES REASONABLE
REGULATION.    Where the leases granted by the association expressly
recited certain regulations previously adopted, to which the lessees assented
and with which they agreed to comply, a further condition and covenant .
that the lessees should keep and perform all such rules and regulations as,
the association should from time to time impose does, not reserve to the .
association an absolute and unqualified power of adopting regulations; |
and a new regulation, to be valid, must be reasonable and consistent with
those existing at the time the leases were made, and where none of such
regulations restricted the right of the lessees to purchase supplies for
consumption in the park where and from whom they pleased, a sub-
sequent regulation in effect forbidding tenants to purchase supplies except
at stores operated or licensed by the association, unless they personally
bring such supplies upon the grounds, is arbitrary and unreasonable.

4. WHEN SALES TO LESSEES BY UNLICENSED DEALER CANNOT BE
RESTRAINED. . Under a regulation providing that "All traffic in vege-
tables, meats, groceries, newspapers and all other articles of merchandise
usually sold in the markets and stores of the association, or any huckster-
ing whatsoever without permission, on its docks and grounds, is hereby
prohibited," the association cannot maintain an action for an injunction
restraining a person, who delivered supplies to lot holders in compliance
with orders sent to him by mail, from selling and delivering goods to les-
sees in this manner, upon the ground that such business interfered with
and lessened the pecuniary value of the exclusive rights of the plaintiff,
since it has no statutory or contract right to restrict the right of the les-
sees to purchase their supplies where and from whom they please.

*Thousand Island Park Assn.* v. *Tucker*, 59 App. Div. 627, reversed.

(Argued December 5, 1902, decided January 6, 1903.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the fourth judicial department, entered
April 1, 1901, affirming a judgment in favor of plaintiff
entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*L. H. Ford* for appellant. The plaintiff is not entitled to the injunction granted by the judgment restraining the delivery of provisions for household use to residents of Thousand Island Park upon mail order. (*Story* v. *N. Y. El. R. R. Co.*, 90 N. Y. 122; *Huight* v. *Littlefield*, 147 N. Y. 338.) Chapter 278 of the Laws of 1883, which purports to authorize plaintiff to deal in provisions, authorize others to do so on said park and make regulations therefor, does not give plaintiff any authority to absolutely forbid such dealing by all except one individual. (*People* v. *Jarvis*, 19 App. Div. 466; *Mayor* v. *S. Ave. R. R. Co.*, 32 N. Y. 261; *City of New York* v. *Hexamer*, 59 App. Div. 4; Story on Agency [9th ed.], § 11; *Rex* v. *McKnight*, 10 B. & C. 734; *A. N. R. R. Co.* v. *Brownell*, 24 N. Y. 348.) The regulation adopted by plaintiff, if it be construed to forbid the delivery of goods on mail order, is unreasonable and against public policy as restricting trade and creating a monopoly. (*Weiler* v. *E. A. Union*, 92 Hun, 278; *R. L. Assn.* v. *Kellogg*, 141 N. Y. 348; *Vil. of Buffalo* v. *Webster*, 10 Wend. 100; *Vil. of Stamford* v. *Fisher*, 140 N. Y. 187; *Carney* v. *N. Y. L. Ins. Co.*, 162 N. Y. 455; *People* v. *Throop*, 12 Wend. 186.) The acts of defendant did not come within the regulation adopted. They did not constitute "traffic in" or "huckstering" on the streets or grounds of plaintiff. (*Rex* v. *McKnight*, 10 B. & C. 734; *Vil. of Stamford* v. *Fisher*, 140 N. Y. 187.) The court will not aid plaintiff by means of an injunction to assume powers that are *ultra vires*. (*Nassau Bank* v. *Jones*, 95 N. Y. 115; *Case* v. *Kelly*, 133 U. S. 521.)

*Francis M. Hugo* for respondent. The plaintiff has the absolute control of trade and traffic in merchandise on Thousand Island Park, and is entitled to the aid of a court of equity to protect this control. (L. 1883, ch. 278; *R. L. Assn.* v. *Kellogg*, 141 N. Y. 348; *Chautauqua* v. *Alling*, 46 Hun,

582.) Plaintiff is entitled to injunctive relief herein. (*Morrill* v. *State*, 38 Wis. 433 ; *Comm.* v. *Gardner*, 133 Penn. St. 289 ; *Graffty* v. *City of Rushville*, 107 Ind. 502 ; *Garvey* v. *L. I. R. R. Co.*, 159 N. Y. 332 ; *Coatsworth* v. *L. V. R. R. Co.*, 156 N. Y. 451 ; *Wheeler* v. *Noonan*, 108 N. Y. 179 ; *Hahl* v. *Sugo*, 169 N. Y. 117 ; *T. & B. R. R. Co.* v. *B., H. T. & W. R. Co.*, 86 N. Y. 126.) The rule or ordinance of the plaintiff association that " All trafficking in vegetables, meats, groceries, newspapers and all other articles of merchandise usually sold in the markets of the Association, or any huckstering whatsoever without permission on its docks and grounds is hereby prohibited," is a reasonable regulation of trade and is not arbitrary, oppressive or in restraint of trade. ( *Vil. of Buffalo* v. *Webster*, 10 Wend. 100 ; *Bush* v. *Seabury*, 8 Johns. 327 ; *City of Brooklyn* v. *Breslin*, 57 N. Y. 593 ; *Meyers* v. *Baker*, 120 Ill. 567 ; *Comm.* v. *Bearse*, 132 Mass. 542 ; *State* v. *Read*, 12 R. I. 135 ; *City of Buffalo* v. *Schliefer*, 2 N. Y. Supp. 216.)

Cullen, J.   The plaintiff was incorporated in December, 1874, under the provisions of chapter 117 of the Laws of 1853, entitled " An act to authorize the formation of corpora· tions for the erection of buildings," under the name of " The Thousand Island Camp Meeting Association," for the purpose of erecting buildings and laying out land for the use of persons who might attend camp meetings on the grounds of the association.   In 1875 it acquired a tract of about eight hundred acres on Wellesley Island in the St. Lawrence river, a part of which it laid out into parks or open squares and streets and the remainder thereof subdivided into lots.   It graded the streets, improved the parks, or open spaces, constructed a dock and built a tabernacle and other buildings, including a hotel.   It leased to individuals a large number of the lots for the purpose of erecting cottages thereon.   These leases ran for ninety-nine years with the privilege of perpetual renewals, and by their terms were " granted and accepted according to the rules and regulations which may from time

to time be adopted and promulgated for the government of said park and which are hereby made part of the instrument." The leases specified that the regulations existing at their date and assented to by the lessees, were:

" 1. No games or diversions of any kind, not approved by said association, will be allowed on any of the premises of the said association at any time.

" 2. The association reserves the right, at all times, to use, lay out and lease all lands not already laid out or designated as streets or avenues.

" 3. The erection of privies is forbidden ; except by consent of the association."

By chapter 4 of the Laws of 1879 the corporate name of the plaintiff was changed to its present title. By chapter 278 of the Laws of 1883 the plaintiff in addition to the powers conferred upon it by its act of incorporation was authorized " To purchase and deal in such provisions and other commodities and articles necessary and proper for supplying lot lessees, cottages and visitors, and to maintain stores, shops, lumber yards and other buildings and erections upon the corporate lands ; to establish and conduct livery stables, baths, bath-houses, boat liveries, boat houses and boats for hire ; to authorize others to engage in such pursuits on said park ; to make and establish regulations therefor ; to improve the corporate property in any and all ways calculated to contribute to the pleasure, health or well being of its lot lessees and visitors." By subdivision 6 of section 1, it was provided that nothing in the act should be construed to prevent the bringing of provisions, building or other materials upon the grounds of said association for the use of those bringing the same, and not intended for the purposes of trade or sale. In August, 1895, the trustees of the plaintiff enacted the following regulation : " All traffic in vegetables, meats, groceries, newspapers and all other articles of merchandise usually sold in the markets and stores of the association or any huckstering whatsoever without permission, on its docks and grounds, is hereby prohibited." The defendant is a farmer in Jefferson county

who has supplied lot owners in the park with poultry, vege-tables and like products. The method in which he conducted his business was, as has been found by the trial court, by means of orders on postal cards sent to him by various lot owners. In compliance with such directions he delivered the goods ordered to the various persons ordering them on their respective premises. The complaint alleged the incorporation of the plaintiff, the improvement of its land, the lease of its lots and the enactment of its regulations against trafficking already recited. It further alleged that the plaintiff had leased a store, a meat market and other buildings to indi-viduals, with a grant of the exclusive privilege of carrying on such business in the park ; that the rental value of such prem-ises depended largely upon the exclusive right so granted to the lessee to carry on the particular business. It was alleged that the defendant in violation of said regulation was traffick-ing in supplies sold in the stores and shops established by the plaintiff and thus injuring its exclusive right to carry on busi-ness. The relief asked was that the defendant be enjoined from trafficking, selling or delivering vegetables, meats, fruits, groceries and any other merchandise on the grounds of the plaintiff without its permission. The trial court found that the defendant had trafficked in vegetables and supplies under orders by post in the way narrated. It held that the plaintiff possessed the exclusive privilege of dealing in merchandise within the limits of the park ; that the regulation adopted by it was reasonable and valid and that the conduct of the defend-ant violated such exclusive privilege. Judgment was granted enjoining the defendant from huckstering or trafficking in vegetables or other farm products for household use or other merchandise usually sold in the market or stores of the plain-tiff and from continuing such traffic as theretofore conducted by him by means of mail orders and personal delivery of goods without first obtaining the permission of the plaintiff.

The real question involved in this case is the right of the plaintiff association to prevent the lessees and occupants of the plots which it has leased from obtaining their supplies by

purchase from others than the plaintiff or the persons to whom it has granted the exclusive privilege of dealing in such supplies. The action cannot be sustained on the theory that the defendant is a trespasser on plaintiff's lands, and that it is entitled to resort to equity to prevent a repetition of the trespass, unless it be first determined that he entered upon the park for the purpose of violating the plaintiff's right. Trespass on land can be maintained only by a plaintiff in possession. Therefore, so far as relates to the entry on the premises of the cottagers, the plaintiff has no standing to complain of a trespass. As far as the roads and streets in the park are concerned, the probability is that they were made public highways by chapter 242 of the Laws of 1895, which enabled the plaintiff to discharge its highway tax by work on those roads. In that case every one of the public had the right of passage over them. But however this may be, the lots leased were laid out on a map and plan of the park showing the streets and roads. By leasing the lots as designated on such maps the plaintiff thereby dedicated the land in the streets and roads to the use of the lot lessees, and any one using a road for access to the premises of such lessee on the latter's request can justify his presence there as against the plaintiff under such dedication. We, therefore, revert to the original question, whether the defendant's errand was lawful as against the plaintiff.

The real theory of the action and the ground on which the decisions of the courts below have proceeded is that the plaintiff had the exclusive privilege to furnish stores and supplies to residents in the park except in cases where the residents might personally bring their supplies with them, and that the defendant's conduct infringed on the plaintiff's exclusive privilege of trading or authorizing trading. The claim of the plaintiff to this exclusive privilege is based on two grounds : *First*, the statute of 1883 ; *second*, the covenants or conditions of the leases granted by it to the various holders of cottage plots. As to the first it would be sufficient to say that if the statute granted to the plaintiff the exclusive right claimed it

14

would be in conflict with section 18, article 3 of the Constitution, which prohibits the legislature from granting to any private corporation or association or individual any exclusive privilege, immunity or franchise whatever. (*Fox* v. *Mohawk & Hudson River Humane Society*, 165 N. Y. 517.) But the act of the legislature is not subject to any such construction. It does not purport to give the plaintiff any exclusive privilege of trading or to forbid others from so doing. It authorizes the plaintiff to purchase and deal in provisions and other commodities for supplying lot lessees and visitors and to maintain stores and shops for that purpose. Thus far it merely grants the plaintiff additional corporate powers, a grant which was necessary, for by the statute under which it was originally incorporated the plaintiff would have no right to carry on any business of the kind. It then empowers the plaintiff to authorize others to engage in such pursuits on the park and " To make and establish regulations therefor." I assume that by this statute there was given to the plaintiff the same power to regulate trade in the park that is generally granted to municipal corporations to regulate trade within their limits. More than this the legislature did not grant. The power to regulate a useful trade does not authorize its prohibition or the creation of a monopoly. " An ordinance cannot be legally made which contravenes a common right unless the power to do so be plainly conferred by legislative grant (with us the legislative power is restricted by the constitutional provision cited), and in cases relating to such a right authority to regulate conferred upon towns of limited powers has been held not necessarily to include the power to prohibit." (Dillon on Municipal Corporations, sec. 325.) " The power to license and regulate legal and necessary business will not give the corporation the power to make contracts which create or tend to create a monopoly." (Id. sec. 362.) The restraint or prohibition of hawking and peddling has always been regarded in this state as a justifiable exercise of the police power. (*Village of Buffalo* v. *Webster*, 10 Wend. 100; *Village of Stamford* v. *Fisher*, 140 N.

Y. 187.) As said by Judge GRAY in the latter case, "It is perfectly competent to empower municipal corporations to prescribe regulations for the orderly conduct of business within their limits and upon the public streets." Therefore, so far as the regulation adopted by the plaintiff forbade trafficking or huckstering in articles of merchandise on the dock, streets or open places, it was valid. It might also restrain peddling and similar trafficking in the park, for all these things would tend to interfere with the comfort of the residents and disturb the quiet and good order of the settlement. But the business done by the defendant did not in any way constitute hawking or peddling. This was so held in *Village of Stamford* v. *Fisher (supra)*. It in no way affected the order or quiet of the community. The defendant took his goods only to those who had previously ordered them in pursuance of those orders. It is doubtful whether even an act of the legislature restraining such a business could be sustained as a proper exercise of the police power. (See *People* v. *Jarvis*, 19 App. Div. 466 ; *People ex rel. Tyroler* v. *Warden, etc.*, 157 N. Y. 116.) It was found by the trial court that the price was made for the goods at the time of delivery and that the sale was not consummated till then. This is immaterial. The defendant did not offer his goods for sale to other persons. If he had assumed to do so that might have constituted hawking or peddling. This action, however, is not brought on any claim that the defendant has violated a police regulation for the maintenance of order or for the prevention of nuisances or objectionable callings, but, as already stated, on the theory that his business has interfered with the pecuniary value of the plaintiff's exclusive rights.

Though the plaintiff gained no exclusive privilege from the statute, if it had continued the owner and possessor of the lands in the park, it would have had, by virtue of such ownership and possession, an unqualified right to regulate business carried on there in such manner as it might deem proper, and to exclude any person from the premises for any reason. By these means the plaintiff could hold a practical

monopoly of all business carried on in the park, a monopoly subject to no legal condemnation because it would proceed from no act of the legislature or municipal regulation, but from the ownership of the land. When the plaintiff leased or granted the cottage plots it might have subjected the leases to such conditions and the tenants to such covenants as it saw fit to impose. If it had been provided in the leases that the tenant or occupant should purchase all his supplies from the plaintiff, or from such shop or market as it might establish, and should obtain no supplies from any other source, I am not prepared to say that such a covenant would not be enforced, or rather that damages could not be recovered for its violation. The exclusive privilege reserved by the landlord would fairly be a part of the consideration for the demise of the premises. But to impose such a restriction on the tenant, some condition or covenant to that effect must be found in the lease. Otherwise the dominion of the tenant is as absolute during the demised term as that of the owner previous to the demise. In the leases granted by the plaintiff, certain regulations adopted by it were expressly recited. None of these restricted the right of the tenant to purchase stores and merchandise for consumption in the park where and from whom he pleased. The lease contained the further condition that the tenant should keep and perform all such conditions or rules and regulations as the landlord should from time to time impose. Thus there was reserved to the landlord the power to subsequently make new regulations. Such power, however, though general in form, is not absolute or unqualified. A new regulation established under this reservation, to be valid, must be reasonable. In this respect the case is entirely analogous to that of a member of a corporation where power is reserved to the corporation either by the statute or by its constitution to modify or repeal by-laws and to enact new ones. " If, then, the power is reserved to alter, amend or repeal, and that reservation enters into a contract, the power reserved is to pass reasonable by-laws, agreeable to law. But a by-law that will disturb a

vested right is not such." (*Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159. See, also, *Parish* v. *N. Y. Produce Exchange*, 169 N. Y. 34.) The question, therefore, is whether the regulation forbidding the tenants or occupants to purchase supplies except at the plaintiff's store, unless they bring those supplies personally upon the grounds, is reasonable. In determining whether the by-law of a corporation is reasonable or not, there should properly be considered the nature of the corporation and the object for which it is organized. In the present case it was intended to maintain plaintiff's park as a camp meeting ground. Its purpose was not only to provide a place for recreation, but also for the spiritual and religious edification of its members. It is well known that some religious denominations entertain views as to the propriety of conduct and demeanor of members, their recreations and their modes of life that seem strict and possibly intolerant to the rest of the community. When a person joins such an association he must expect to conform to its standards. So here, any one leasing grounds from the plaintiff, with the reservation in his lease of the right of the plaintiff to establish new regulations, might naturally expect the possibility of new regulations regarding the enjoyment of his property so as to prevent giving scandal or offense to the other tenants. Regulations of this nature which would be condemned as unwarrantable invasions of private liberty in the case of ordinary companies organized for the improvement, development and sale of tracts of land would, in the case of an association like the plaintiff, be properly upheld. The regulation which the plaintiff has sought to import into its leases is not of this character, but solely for the purpose of pecuniary gain. No regulation of the kind nor on the subject existed at the time the grounds were leased, and there was no reason why a person renting the lands should expect such a regulation to be enacted by the plaintiff any more than if he had rented the premises from an ordinary land company. The regulation seems to me of a most arbitrary and unreasonable character. Not only are the cottagers entitled to purchase where they

can buy the cheapest, but in articles of food there is great dif-
ference of individual taste.   In the grocery shop established
by the plaintiff there are certain brands of flour or coffee, and
it may be that if the question is to be decided by the courts
those brands would be held to be the best; nevertheless some
of the cottagers might like other brands better.   Some might
prefer their vegetables fresh from the defendant's farm to
those that had stood on the huckster's stand in the market.
The articles kept in the plaintiff's stores and shops may be
good and the prices charged therefor reasonable, but the
pecuniary means of some of the cottagers may be such as to
require them to purchase inferior articles at a lower price.
Thus the regulation, if upheld, would seem to establish a uni-
form standard of taste and a uniform style of living.

The question involved in *Round Lake Association* v. *Kel-
logg* (141 N. Y. 348) and *Chautauqua Assembly* v. *Alling*
(46 Hun, 582) is essentially different from that before us.   In
the *Round Lake* case the action was brought to restrain the
defendant, who had acquired a lease of a plot of land, from
using the premises as a place for the sale of merchandise in
violation of a regulation adopted by the association forbidding
such use.   It was held that the regulation was reasonable, the
lot not having been leased for the purposes of a shop or store,
but to enable persons habitually attending camp meetings to
erect cottages or tents thereon.   In the *Chautauqua* case the
habendum clause declared that the premises were to be held
for a cottage or tent for a private residence, and the defend-
ant attempted to maintain thereon a boarding house.   Both
cases involved the use of the demised land for improper or
unauthorized purposes.   The plaintiff has covered that sub-
ject by express provision in its leases that the premises shall
not be used for any mercantile or mechanical trade, for a
boarding or lodging house, or for any purpose other than a
summer residence.   Any violation of this covenant would be
properly restrained.   But limitations or restrictions on the use
of property are in no way akin to restrictions or limitations
on the right to purchase supplies whereon to subsist.   The

fact that a restriction on one subject was imposed by the lease gave no intimation that subsequently there might be imposed restrictions on the other subject. It is said that liberty of purchase is still permitted to the tenants and cottagers if they personally bring in the goods purchased. But this is no liberty at all. The tenant ordering goods might be sick or infirm and unable to leave his residence. If it be asserted that he might authorize another to bring in the goods for him that concession would dispose of the present case, for the defendant acted in pursuance of instructions given by the tenants. If it is a violation of the plaintiff's rights for the defendant to furnish vegetables to the cottagers on orders from them, it would equally violate those rights for a grocer in Syracuse or Utica to deliver to a cottager a barrel of sugar or a barrel of flour. No such restriction is reasonable.

The judgment appealed from should be reversed and a new trial granted, costs to abide the event.

PARKER, Ch. J., GRAY, O'BRIEN, MARTIN and WERNER, JJ., concur; VANN, J., not voting.

Judgment reversed, etc.