ANTHONY *v.* CHICOPEE MANUFACTURING CORPORA-TION OF GEORGIA *et al.*

No. 6798. April 13, 1929.

*B. Frank Whelchel* and *G. F. Kelley,* for plaintiff.

*Edgar B. Dunlap, Jones & Reid,* and *B. P. Gaillard Jr.,* for defendants.

Beck, P. J.   George Anthony brought a petition against Chicopee Manufacturing Corporation et al., and sought injunction to restrain them from interfering with him and his business as a grocery merchant and from interfering with the delivery of goods purchased by tenants residing in the houses built by the defendant corporation upon lands owned by it.   That corporation is the owner of a large tract of land in Hall County, near the City of Gainesville, Georgia, on which is maintained and operated a large industrial plant for the purpose of manufacturing surgical gauze, cheese cloth, buntings, and similar fabrics.   It further appears that, connected with and as a necessary part of this plant and enterprise, it laid out and constructed and built a mill village of paved streets, modern.street lights, sanitary drainage and sewerage, with up-to-date equipment and well-built and equipped dwellings for the housing of the employees of said plant and enterprise.   These houses are equipped with conveniences which make for comfort, cleanliness, and health, and insure the best sanitary conditions.   This

plant was constructed and is being maintained of high-grade products, like those enumerated, for the purpose of securing healthful, clean, and sanitary conditions under which these products might be made. It was shown that in order to secure such living conditions it was necessary to expend large sums of money. It was shown that the mill, buildings, equipment, paved streets, lights, village, and other conveniences mentioned are all located on the private property of the defendant corporation, and are on the large tract of land located as aforesaid, and that all of it is the private property of the defendant corporation, and that it all forms one connected plant, plan, and arrangement. It was shown that in order that it might secure the ends contemplated, it sought to maintain exclusive dominion and control over its property, and to prevent intrusion on the property by objectionable persons, and to prevent people from carrying on businesses on its property, contrary to its wishes. Trespass signs were placed on the property and at the entrances to streets, warning the public that this was private property, and that no trespassing would be allowed on or about it. The village, property, and streets were at all times policed and guards stationed to keep off objectionable persons or any person who might attempt to go on the property without permission of defendant corporation.

A contract was signed by the employees living in the village and occupying the houses thereof, providing that the premises in the village should not be used for any purpose except for the purpose of a home place, and that in accepting the terms and conditions of the lease contract the employees agreed "to abide by, obey, and maintain all rules and regulations of the village that are or may hereafter be prescribed by said Chicopee Manufacturing Corporation during the duration of this lease contract." It was also shown that almost all the goods manufactured by the plant of defendant are exclusively for surgical use and for use by physicians in ministering to the sick, and defendant is anxious that the very best sanitation possible be used in its village and among its employees and that they be kept from the use of anything that might produce sickness. To secure this end defendant invested large sums of money in a private dairy with the best modern equipment, in order to furnish its employees with proper milk. The cows of this dairy are inspected weekly and kept in the best of condition.

The defendant furnishes this milk at absolute cost, and does not make a cent of profit on its investment and does not expect to. This milk is furnished at twelve and one half cents per quart. It was also shown that the plaintiff in error was selling milk to the employees in the mill village, and that he did not own a dairy, and that it was necessary that plaintiff secure his milk from some dairy or place over which defendant corporation had no control or right of examination.

After the introduction of evidence by both parties, the trial judge passed an order refusing to grant the injunction prayed against the Chicopee Manufacturing Corporation; and to the order refusing the injunction sought the plaintiff excepted.

. The controlling question in this case relates to the right of third persons to pass over private ways for the purpose of delivering goods which had been purchased from them by tenants of the owner of the land upon which the houses occupied by the tenants were located. It appears from the testimony in this case that petitioner was a retail groceryman and delivered groceries purchased, when instructed to do so, at the homes of his customers, some of whom were tenants occupying houses upon the property of the defendant corporation, and which they occupied under a written contract with the defendant corporation.

"Under the general rule that those rights essential to the enjoyment of the demised premises pass as appurtenant thereto, rights of ingress and egress by the usual way pass to the tenant, although not specified, or the word ' appurtenances ' is not employed. . . So a tenant is entitled to the maintenance of an entrance which is necessary to the full enjoyment of his use of the premises, although it may not be the only means of access. . . . Rights of ingress and egress which are not expressly granted must be necessary to the complete enjoyment of the premises for the purpose for which they were rented." 36 C. J. 33, 34, § 634.

"The right of way appurtenant to a leased house includes not only the right of the lessee to use it, but a right of use by any other person who, with the tenant's permission, visits the house for a lawful purpose." Commonwealth v. Burford, 225 Pa. 93 (73 Atl. 1064). In Mitchell v. State, 12 Ga. App. 557 (77 S. E. 889), it was said: "Where premises are rented to another, the landlord has no right, during the tenancy, to forbid a third person to go

upon the rented premises for a lawful purpose with the permission of the tenant. A tenant is entitled to the undisturbed enjoyment of his possession, and the landlord has no right to exercise any control over the personnel of the tenant's guests, or in reference to the time of their visits, so long as they are upon a lawful mission and do not infringe upon any right of the landlord." While the specific ruling in that case related to the right of the tenant to have guests of his own selection come upon the premises rented, we think that the ruling is also applicable as to having a third person come upon the premises, at the invitation of the tenant, expressed or implied, for the purpose of completing a business transaction, such as the delivery of goods, merchandise, etc. The tenant, of course, has the right of ingress and egress, and we think that this implies also the right of ingress and egress of those having a lawful business with the tenant and who come over the way of ingress to the house occupied by the tenant, impliedly by the invitation of the latter, and for the purpose of delivering goods which had been ordered by the tenant, and which both the vendor of the goods and the tenant intended should be delivered, the delivery being essential to the completion of the sale and purchase. See also the case of Konick v. Champneys, 108 Wash. 35 (183 Pac. 75, 6 A. L. R. 459). In Thousand Island Park Association v. Tucker, 173 N. Y. 203 (65 N. E. 975, 60 L. R. A. 786), it was said: "Streets shown on the plan of the park of an association organized to maintain a camp-meeting and lease lots to persons desiring the advantages of the ground are dedicated to the use of the lessees and those, at their request, using them for access to their lots, so that the association can not prevent such use." And in Commonwealth v. Burford, supra, the Supreme Court of Pennsylvania discussed more at length the principle involved in the ruling in the Park Association case, supra, and in the course of the decision in the Burford case the court said: "When Fitzgerald and Lenhart leased a house in the village to a tenant, that necessarily involved a demise of the land upon which the house stood and the lot, if any, used in connection therewith. The property leased was entirely surrounded by other lands of the lessors, and was not accessible from any highway in any manner save over such other lands. The written lease contained no express grant of a right of way from the house to the public highway, nor did the mere words of the lease embody anything

from which such a grant could be implied. When a conveyance contains no express grant of a right of way appurtenant to lands, and no words are used from which such grant arises by implication, such right of way may, however, arise from the circumstances of the grant itself. The most marked right of way arising in this manner is the way of necessity. Where land is sold or leased and is so situated that the access to it from the highway can not be had except by passing over other land of the grantor or lessor, the grantee or lessee becomes entitled to a right to pass over the land of his grantor or lessor for the purpose of reaching the highway and returning to his own land. Wissler *v.* Hershey, 23 Pa. 333; Ogden *v.* Grove, 38 Pa. 487, and note to Atkyns *v.* Bordman, 4 Leading Cases in the American Law of Real Property, Sharswood & Budd, p. 191. Had there been no recognized private customary way leading from the houses in the village to the highway, the tenants of those houses would have been entitled to a way of necessity from their houses over the other land of the lessors to the highway. The facts agreed upon in the case stated, however, established that the village was traversed by private and customary ways and paths used by the tenants in passing through the village, 'and in going to and from the public roads,' and, further, that the tenants could only have access to their houses over such 'private and customary way.' . . When Fitzgerald and Lenhart leased the several houses, they, the owners of the land, knew of the existence of these private customary ways, and they knew also that these ways were the only means of access to the houses which they were leasing. These private customary ways, therefore, passed by the lease as appurtenant to the house, and the fact that the lease contained no express grant is wholly immaterial. The ways being appurtenant to the house, the title to the latter carried with it the right to the use of the way. The right being appurtenant to the house, it included not only the right of the lessee to the use of it, but that it might be used by his family and others who with the permission of the tenant visited his home for any lawful purpose. 'It needs no citation of authority. to show that such a right of way, appendant or annexed to an estate, may be used and enjoyed by those who own or lawfully occupy any part of the dominant tenement for any purpose to which it may from time to time be legitimately applied. Only those who may be properly regarded as trespassers on the

dominant tenement can be excluded.' Gunson *v.* Healy, 100 Pa. 42." Other cases laying down substantially the same doctrine might be cited; and the doctrine seems sound and applicable in this State, under our laws as to ways of necessity.

If the petitioner in this case had the right to go over the ways in question to reach the houses of those who had made purchases from him and who were tenants of houses on the land of the defendant corporation, then the act of the defendant corporation in ejecting him from the ways of the mill village and the use of force to eject him therefrom, and the threatened continuance of these forcible means to prevent the tradesman from reaching the houses of his customers, were such threatened wrongs on the part of the defendants as would give jurisdiction to a court of equity to restrain them and to prevent the repetition of the wrongs.

We do not mean by anything said in this opinion, of course, that the defendant corporation could not make a specific contract with its tenants or those who are about to become its tenants.that the ways of ingress to the houses rented should not be used by tradesmen for the purpose of delivering goods; and where such a specific contract is made, it might be a modification or qualification of the right of ingress and egress in those who are carrying on business with the tenants, and whose purpose in going upon the ways is to deliver goods purchased by the tenants. If such a specific contract had been shown, a different question would have been presented in this record. And we do not here and now rule upon what would have been the effect of such a specific contract. But the fact that notices against trespassers had been posted, and the further fact that the tenant had signed a contract agreeing to abide by and comply with the rules and regulations made by the defendant, did not have the effect to qualify or restrict the right of a tenant to a way of ingress and egress for himself or for those who came to his house for a lawful business.

*Judgment reversed. All the Justices concur, except*

RUSSELL, C. J., dissenting. I am of the opinion that the stipulation in the contract of rental to the effect that the tenant agreed "to obey and maintain all rules and regulations . . that are or may hereafter be prescribed . . during the . . contract, construed in connection with the evidence showing, circumstantially at least, that the delivery of the articles in question was forbidden, au-

thorized the judgment of the judge of the superior court, and that the judgment should be affirmed.