Isidor Wassebvogel,
Spec. Ref. Plaintiff, the owner of a restaurant in the building, 485 Madison Avenue, New York City, seeks to enjoin its landlord, the defendant Madison 52nd Corporation, and another tenant, the defendant Columbia Broadcasting System, Inc., from permitting the defendant Schraffts the use of the hallways, elevators and other means of ingress and egress to said building for the purpose of vending food and beverages. Plaintiff also seeks to enjoin the defendant Schraffts from using these premises for the purpose of making sales of food and beverages to the employees of the Columbia Broadcasting System, Inc.
The record shows that the defendant Columbia Broadcasting System, Inc. (hereinafter referred to as í£ C. B. S. ”) has occupied office space in the building owned by the defendant Madison 52nd Corporation (hereinafter referred to as “ Madison ”) since 1928, and, in fact, now occupies practically the entire building above the street floor. Plaintiff has operated a restaurant on the street floor of the building since 1940. For the first nine years of its lease, plaintiff conducted an “ outgoing order business ’ ’ whereby it filled orders for food and beverages to be consumed elsewhere than in its leased premises. In many instances, the food and beverages so ordered were delivered to the purchasers by a deliveryman specifically employed by plaintiff for that purpose. This delivery service was discontinued by plaintiff approximately eight years ago. In or about the latter part of January, 1957, C. B. S., with the knowledge and tacit approval of Madison, arranged that Schraffts have a ‘ ‘ coffee wagon service ’ ’ in the premises leased by C. B. S. so that its employees could purchase food and beverages during the morning “ coffee break ”. Schraffts commenced such delivery service on February 19,1957 and has continued it to date.
*178 It is plaintiff’s contention that the introduction and continuance of the Schraffts coffee wagon service constitutes a violation of its lease under which it claims the exclusive right to all ‘ ‘ outgoing order business ’ ’. In answer to this contention, O. B. S. asserts that under its lease, it cannot be prevented by the landlord or any other tenant in the building from using its premises in the manner complained of by plaintiff. Madison claims that plaintiff has no exclusive rights such as it seeks to enforce in this action. Schraffts alleges that it is merely an invitee of C. B. S. and, therefore, cannot in any way be enjoined by an action instituted by another tenant of the building.
The provisions of its lease upon which plaintiff relies provide as follows:
“ 38. The landlord shall grant the Tenant the exclusive privilege on outgoing order business throughout the building, insofar as id is permitted by law and insofar as it lies within the Landlord's, power to control. (Italics added.)
‘ ‘ 45. While this lease is in full force and effect and until the Tenant shall be in default of any term, covenant and/or condition of this lease the Landlord shall refrain from leasing, consenting to or permitting any other portion of the building of which the demised premises form a part to be used as a public restaurant or eating place, for the sale of alcoholic and/or nonalcoholic beverages for consumption on the premises, or as a cigar or confection stand, provided, however, that nothing in this lease shall be construed as restraining the Landlord from renting, consenting to or permitting any other portion of the building to be used as a private club wherein food and beverages alcoholic and non-alcoholic, and cigars cigarettes and other tobacco products may be sold for consumption on the premises, or as a luncheon club open to members and their guests, or for any other type of private club or organisation that the Columbia Broadcasting System Inc. may organise or sponsor wherein food and beverages, alcoholic and non-alcoholic, and cigars, cigarettes and other tobacco products, may be sold for consumption on the premises.” (Italics added.)
Plaintiff also contends C. B. S. violated the terms of its lease by the arrangement it made with Schraffts. In substance, 0. B. S.’s lease authorized it to use the premises for the business of broadcasting, ‘ ‘ and such other business as may be incidental thereto or related thereto ”, and for the conduct of any entertainment business “ not in conflict with the rights of other tenants ”. Although the term “ entertainment business ” is defined as not to include the sale of food or beverages or the operation of a night club by 0. B. S., Madison, by other express *179 provisions contained in the C. B. S. lease, acknowledged that the operation of a dining room and a kitchen to he used by executives and guests of C. B. S. was to be deemed a use of the premises incident to the conduct of the broadcasting business. Thus, plaintiff’s action is based on the contention that O. B. S. is violating its own lease and on the claim that in arranging for the Schraffts’ coffee wagon service, C. B. S. is knowingly participating in a breach of the covenants in plaintiff’s lease which grant it the exclusive rights to all outgoing order business.
The credible testimony and documentary evidence fail to sustain either of plaintiff’s contentions with respect to C. B. S. In arranging for the coffee wagon service, it is the opinion of the court that C. B. S. was merely exercising its right to select the business invitees who may enter its leased premises for the benefit of C. B. S. and its employees. In so doing, C. B. S. did not violate any of the provisions or conditions of its own lease. Contrary to plaintiff’s contention, the service so arranged for by C. B. S. for the convenience of its employees cannot be deemed to be the conduct of a restaurant business. The Schraffts ’ coffee wagon is paid solely by the employees of C. B. S. to Schraffts, in whose profit therefrom C. B. S. does not share, nor does it receive any .other remuneration. C. B. S. allows Schraffts to enter its premises as an invitee and it does so in the furtherance of the conduct of its own business. There being no restrictions in its lease with respect thereto, C. B. S. has the right, even against a landlord’s wishes, to have any business invitee of its choice enter its leased premises (Thousand Is. Park Assn. v. Tucker, 173 N. Y. 203, 212; Federal Waste Paper Corp. v. Garment Center Capital, 268 App. Div. 230, 232-233, affd. 294 N. Y. 714). Thus, nothing in the record warrants the conclusion that C. B. S. engaged in the conduct of a business not permitted by its lease. Its arrangement with Schraffts merely has the same effect as if the employees themselves had placed orders for food by telephone or in person at the counter and then had the same delivered to them at their desks in the offices of C. B. S. In any event it is doubtful whether plaintiff would be in a position to complain of an alleged breach of the C. B. S. lease, if such breach actually existed, inasmuch as the landlord of the premises fails to complain thereof and, in effect, has consented thereto.
Insofar as plaintiff’s claim with respect to its own lease is concerned, to come within the rule of the cases dealing with covenants by a landlord against the leasing of premises for the conduct of a business competitive with that of the tenant, plaintiff must show that there has been a breach of the covenants in *180 plaintiff’s lease and, in addition thereto, that C. B. S. had knowledge of such covenants when it entered into its present lease. Neither of these two essential elements was established by plaintiff. By allowing the Schraffts ’ wagon to sell food and beverages to its employees, C. B. S. is not permitting any portion of the building to be used as a “ public restaurant or eating place ” or a “ confection stand ” within the meaning and intent of paragraph 45 of the plaintiff’s lease {supra). The service is not offered to the public and is confined solely to employees of C. B. S., in space leased by C. B. S. Nor do the actions of C. B. S. constitute a violation of paragraph 38 of plaintiff’s lease {supra). As above noted, Madison does not have any power to control its tenants’ selection of their business invitees. Moreover, the record clearly shows that during the 17 years that plaintiff has occupied space in the building, employees of C. B. S. have had food and beverages delivered to them from several restaurants and drug stores in the neighborhood without any protest by plaintiff.
The applicable law cannot be disputed. A tenant is not bound by prior restrictive covenants in the lease of another tenant unless he has knowledge of them at the time he rents his premises (Weiss v. Mayflower Doughnut Corp., 1 N Y 2d 310, 316; Waldorf Astoria Segar Co. v. Salomon, 109 App. Div. 65, 69-70, affd. 184 N. Y. 584). This vital element of knowledge on the part of C. B. S. with respect to the provisions of plaintiff’s lease was not established upon the trial. Nothing in its own lease made it incumbent upon C. B. S. to inquire into and be bound by the terms of the leases of other tenants in the building. This case is clearly distinguishable from the case of Arista Luncheonette v. Harann Operating Corp., (140 N. Y. S. 2d 823, revd. 1 A D 2d 681, affd. 1 N Y 2d 724), which is cited by plaintiff in support of its position. In the cited case, the defendant’s lease contained a specific reference to the plaintiff’s lease therein. Furthermore, the defendant was held to be bound by its attorney’s actual knowledge of all of the restrictions in the plaintiff’s lease. No such reference or actual knowledge exists in the case at bar. In the absence of such knowledge, a third party such as C. B. S. cannot be bound by restrictions to which only the landlord has agreed (Senn v. Ladd, 179 Misc. 306, 307-308; Uttal's Leather Store v. Odell, 255 App. Div. 490, 491). In any event, even if the C. B. S. lease contained a specific reference to plaintiff, such notice would only serve to restrict G. B. S. from engaging in a certain business but it would in no way restrict C. B. S. with regard to any business invitees that *181 it might permit to enter its leased premises. Moreover, in view of plaintiff’s knowledge and long acquiescence in the practice of orders for food and beverages being delivered to C. B. S. employees, any duty of inquiry which might have been based on such a specific reference in the C. B. S. lease would be deemed to have been waived by plaintiff.
Upon the evidence before me, therefore, I hold that by arranging for its employees to obtain food and beverages in its own leased premises from the Schraffts’ coffee wagon, C. B. S. did not violate the provisions of its own lease, nor any of the provisions of plaintiff’s lease.
Plaintiff’s claim against Madison is based primarily on its contention that under the provisions of paragraph 38 of its lease {supra), Madison granted it exclusive rights to all outgoing order business. Plaintiff, however, apparently overlooks the limitation of this exclusive privilege granted in paragraph 38 by the phrase “ insofar as it is permitted by law and insofar as it lies within the landlord’s power to control.” It is obvious that all Madison could assure plaintiff was that in those parts of the building which were public and under the landlord’s control, it would prohibit any other firm from engaging in an outgoing order business. In other words, in addition to prohibiting a sale of food and beverages in the public corridors, Madison only agreed not to rent other space in the building for an outgoing order business. Contrary to plaintiff’s contention, Madison could not give plaintiff a right it did not possess, namely, the right to prohibit tenants and their employees from purchasing in their own premises food, beverages or other supplies from whomsoever they chose to invite to their leased space in the building for such purpose. Since Madison cannot control and does not have the legal right to control the persons with whom its tenants choose to do business in the premises leased by them, it necessarily follows that Madison has not violated the terms of paragraph 38 of plaintiff’s lease.
Furthermore, paragraph 45 of plaintiff’s lease {supra) defines plaintiff’s rights with respect to Madison. Under this paragraph, Madison’s grant of an exclusive privilege to plaintiff is qualified by the provisions that “nothing in this lease shall be construed as restraining the Landlord from renting, consenting to or permitting any other portion of the building to be used as a private club wherein food and beverages alcoholic and non-alcoholic * * * may be sold for consumption on the premises, or as a luncheon club open to members and their guests, or for any other type of private club or organization *182 that the Columbia Broadcasting System Inc. may organize or sponsor wherein food and beverages, alcoholic and non-alcoholic * * * may be sold for consumption on the premises.”
This broad language clearly reserves to C. B. S. the right to make any arrangement it chooses for the sale of food and beverages for consumption on its premises. The Schraffts’ coffee wagon is neither a public restaurant nor a public eating place within the scope of the limitations set forth in paragraph 45. The credible evidence adduced upon the trial clearly shows that the Schraffts ’ coffee wagon sales are made exclusively to C. B. S. employees and then only within the C. B. S. leased premises. There is nothing public about the sales or consumption of such food and beverages. Under these circumstances, there is nothing that Madison can do to interfere with 0. B. S.’s rights, and no rights which were given to plaintiff which Madison could legally protect.
The evidence adduced upon the trial established no cause of action against Schraffts. The credible proof shows that this defendant entered the building pursuant to a request from a tenant thereof and with the permission and encouragement of the landlord. A business visitor cannot be enjoined from entering a building when it does so at the request of a tenant and with the consent of the landlord regardless of whether such request or consent constituted a breach of contractual arrangements which either the tenant or landlord had with third parties. Business invitees have a right to make reasonable use of the tenant’s usual means of ingress and egress (Federal Waste Paper Corp. v. Garment Center Capital, supra p. 232). It necessarily follows that plaintiff’s prayer for relief against Schraffts must be denied.
Judgment is rendered, accordingly, in favor of defendants, dismissing the complaint upon the merits.
No costs are awarded.
Submit decree within 10 days on 3 days’ notice.
The above constitutes the decision of the court as required by the applicable provisions of the Civil Practice Act.