Requestor: Hon. Thomas Hines, Acting Commissioner New York State Department of Labor State Office Building Campus Building No. 12 Albany, New York 12240
Written by: Robert Abrams, Attorney General
You have requested our opinion as to whether (1) migrant farmworkers, living in housing provided by their agricultural employers in New York, have a legal right to receive clergy, medical or other service providers, lawyers, representatives of labor organizations, the press and other visitors without interference by their employers; (2) such visitors are subject to prosecution for criminal trespass (§§ 140.00-140.17 of the New York Penal Law) when they meet with migrant workers in labor camps owned by their employers; and (3) migrant farmworkers may assert the common law rights of tenants to see business invitees in their labor camp housing?
As noted in a report issued in 1990 by the Governor's Task Force on Agricultural Employment, Education and Labor ("Governor's Report"), "[t]here is no explicit state law which provides a general right of access or visitation right to farmworkers by labor union, legal services or other governmental agencies at farm labor camps, even during non-working hours."[1] There is also no Federal law which expressly provides a right of access to migrant labor camps. For the reasons given below, we conclude that migrant farmworkers have the legal right to be visited in labor camps by doctors, lawyers, labor union representatives, the clergy or other persons during non-working hours without interference by their employers or owners of the labor camps.
According to information which you have supplied to us, there were 250 licensed migrant labor camps in New York State in 1987. Memorandum from Counsel's Office, New York State Department of Labor, dated March 29, 1991 ("DOL Memorandum"). It is believed that an equal number of camps are unlicensed. Ibid. While the quality of housing in labor camps varies from farm to farm and state to state, it is widely recognized that housing of migrant farmworkers ranks as the poorest of all housing in the nation.Research on Migratory Farm Workers, Cornell University (1986), p 9. To address the housing problem for farmworkers, New York State established minimum housing standards for migrant labor camps. New York Public Health Law § 225. New York requires a permit to operate a migrant labor camp occupied by five or more persons. Id. A migrant labor camp permit may not be issued unless the housing meets State sanitary standards, which cover building design, construction, ventilation, heating, water supply, toilet facilities, working and eating facilities, garbage storage and collection, bathing and laundry facilities. Public Health Law § 225(5)(m); State Sanitary Code, 10 NYCRR Part 1 et seq.
Of the approximately 20,000 to 40,000 migrant workers who work in New York each year only about 13% report that they are provided free housing and utilities. DOL Memorandum. Other farmworkers may pay rent which is deducted from their earnings. Ibid. The New York State Labor Law, Article 19-A, permits employers to charge migrants for housing so long as such charges do not lower their earnings below the minimum wage rates set by the Labor Law. Labor Law § 671(5); 12 NYCRR § 190-3.1(6). The balance live in other housing which they obtain themselves. DOL Memorandum.
Migrant farmworkers who reside in farm labor camp housing supplied by their employers live in that housing for the duration of their employment which lasts between one and seven months. Id. A sizable minority of these workers, however, are employed by more than one employer during this period of time. Id. Their average stay is approximately three to four months. Id. Once migrant workers complete their employment with their employers, they are required to vacate their housing immediately. Id.
Though labor camps only provide temporary shelter to migrant farmworkers, the camps are nonetheless the residences of the farmworkers who are lodged there. In our view, migrant farmworkers living in labor camps are tenants within the meaning of New York State's Real Property Law. As tenants, migrant farmworkers have the common law right to receive guests of their choice. Thousand Island Park Assn. v Tucker, 173 N.Y. 203
(1903); Colbee 52nd Street Corp. v Madison 52nd Corp., 8 Misc.2d 175 (NY Co 1957), affd, 5 A.D.2d 971 (1st Dept 1958). Thus, the farmer or grower who acts as the landlord does not have the right to screen, control, require prior notice or warning, or otherwise deny access to any person the migrant farmworker wishes to see in the farmworkers' living quarters.
The test for determining whether an employee residing in housing furnished by his or her employer is a tenant or a common law servant was articulated by the New York State Court of Appeals in Kerrains v Peopleof the State of New York, 60 N.Y. 221 (1875):
 "There is no inconsistency in the relation of master and servant with that of landlord and tenant. A master may pay his servant by conferring on him an interest in real property, either in fee for years or at will, or for any other estate or interest and if he does so the servant then becomes entitled to the legal incidents of the estate, as much as if it were purchased for any other consideration . . . And, as there is nothing in the facts stated to show that the claimant was required to occupy the house for the performance of his services, or did occupy in order to their performance, or that it was conducive to that purpose more than any house which he might have paid for in any other way than by his services and as the case expressly finds that he had the house as part remuneration for his services, we cannot say that the conclusion at which the revising barrister has arrived is wrong."
Id., 60 N Y at 226-227. Citations omitted; emphasis added. Free housing is provided to migrant farmworkers as an inducement to attract a work force and as partial remuneration, not because the farmworker is required to perform services in the housing. Franceschina v Morgan,346 F. Supp. 833, 838 (SD Ind 1972). Unlike caretakers, janitors, building superintendents, renting agents or clergymen, who are considered to be servants or agents and not tenants since occupancy in their employer's housing is required for the performance of services, migrant farmworkers' occupancy in migrant labor camps is exclusive and independent of farm work. Farmworkers usually are not required to live exclusively in the labor camp and are provided housing primarily as a benefit to the farmworkers, not for the farmer. Soler v G. U., Inc.,833 F.2d 1104, 1107 (2d Cir 1987). The benefit that farmers obtain by having a labor force close at hand can be viewed as part of the consideration paid by the workers in exchange for housing. Franceschina vMorgan, supra, 346 F Supp at 838. Under the test articulated by the Court of Appeals in Kerrains, migrant farmworkers occupy the status of tenants while residing in migrant labor camps.
Migrant farmworkers satisfy other indicators of tenancy. One way or another, migrant farmworkers pay for housing in the labor camps. Some farmworkers pay rent for housing which is deducted from their earnings. Under Article 19-A of the New York Labor Law, an employer may charge migrant farmworkers for housing so long as such charges do not lower their earnings below the minimum wage rates set by law. Other farmworkers are provided free housing in migrant labor camps. Practically speaking, even if a migrant farmworker does not have to pay for housing, a portion of the migrant farmworker's compensation is for housing. Although the grower or farm owner may specify to the farm labor contractor that housing is rent free as an inducement to secure a work force, the free rent aspect of the labor camp justifies the low or minimum wages paid the farmworkers. See, State v Schack, 58 N.J. 297, 277 A.2d 369 (1971);Folgueras v Hassle, 331 F. Supp. 615 (WD Mich 1971); Franceschina vMorgan, supra, 346 F Supp at 838; State of Washington v Fox, 82 Wn.2d 289
(1973), 510 P.2d 230 (1973), cert. denied, 414 U.S. 1130 (1974).
The farmworker also normally occupies housing in a migrant labor camp for an agreed upon term — the harvest season or the length of employment on the farm. This type of occupancy is recognized as tenancy for a term under New York's Real Property Law §§ 232-b and 232-c. Under this kind of arrangement, the migrant is a lawful tenant in the housing supplied by the farmer or grower for a definite term or period of time. Michael Tuck Foundation, Inc. v Hazelcorn, 187 Misc. 954 (NY Munic Ct 1946), affd, 188 Misc. 1046 (App Term 2d Dept 1947). If the farmworker occupies the migrant housing "at the will" of the farmer or grower, which is sometimes the case, the occupancy is lawful and recognized as tenancy at will. Larned v Hudson, 60 N.Y. 102, 104 (1875); Stauber v Antelo,163 A.D.2d 246, 558 N.Y.S.2d 67, 69 (1st Dept 1990).
A 1969 amendment to the New York Labor Law established minimum wage standards for migrant farmworkers, including a provision which expressly limited the "hours worked" for a migrant farmworker to time "worked in the fields or at an assigned place of work". New York Labor Law §671(6). This amendment supports the conclusion that migrant farmworkers should be accorded the status of tenants while occupying housing in labor camps and not common law servants, such as domestics or building superintendents. While not working in the fields, the migrant farmworker has possession and control of the housing provided in the labor camp which is an essential element for finding a landlord-tenant relationship. Feder v Caliguira, 8 N.Y.2d 400, 404 (1960).
Thus, migrant farmworkers enjoy the rights of tenants while residing in labor camps. One of those rights is the right to receive guests of their choice without interference from the farmer or landowner who acts as their landlord. Thousand Island Park Assn. v Tucker, supra, 173 N.Y. 203. "Their tenancy entitled them, their guests, and representatives of assistance organizations to full rights of ingress and egress to and from their dwellings". Folgueras v Hassle, supra, 331 F Supp at 624. As tenants, migrants are vested with the full rights of tenancy. Ibid. The migrant is the owner of an estate for a period of time, and has all the usual rights and remedies of an owner to defend his possession.Folgueras, supra, 331 F Supp at 624-625. One of the rights of tenancy, with which the landowner may not interfere, is the right of the tenant to invite and associate with guests that he chooses. Ibid.; Colbee 52ndStreet Corp., supra, 8 Misc.2d 175.
A trespass action cannot be maintained by a farmer against a guest of a tenant migrant worker. Thousand Island Park Association v Tucker, supra,173 N Y at 209. "Trespass on land can be maintained only by a plaintiff in possession." Ibid. Thus, as to entry on the premises of tenants, the landowner has no standing to complain of a trespass. Ibid. "By leasing the lots as designated on such maps, the plaintiff thereby dedicated the land in the streets and roads to the use of the lot lessees, and anyone using a road for access to the premises of such lessee on the latter's request can justify his presence there as against the plaintiff under such dedication." Ibid. The migrant worker, therefore, as a tenant, has the right to receive invitees at his leased premises and also to be visited by service providers. Farmers or growers do not have the right to deny migrant farmworkers residing in labor camps access to doctors, legal service attorneys, clergy or other persons on whom they depend for essential services.
In our view, a provision in a lease for migrant farmworker housing which would prevent access to visitors supplying essential services would offend public policy, affronts the sense of decency and would be unconscionable. Most migrants who work in this State could not accept job offers unless their employer provided housing for them. DOL Memorandum from Counsel's Office, New York State Department of Labor, dated March 29, 1991. Once they arrive at the camp they are usually penniless and lack resources to pay rent until after they receive their first paycheck. Ibid. Consequently, migrant workers lack the ability to bargain or negotiate with their employers about housing conditions. Ibid.
 "Language, color, and culture isolate the migrant from the community where he works. Migrants live in labor camps, often miles from the nearest town; usually they do without private transportation. This severely limits access to nearby towns. Long working hours and money likewise limit the ability to leave camp.
 "The most significant isolation, however, stems from the migrant's transience itself. Migrant farm workers `arrive, work and [depart] in isolation from the life of various communities whose fields they infiltrate and work.' They are never part of the communities where they work and because of this the communities rarely treat the migrant's problems as their own. Thus, the migrant can expect little from surrounding communities." Folgueras, supra, 331 F Supp at 620.
As a result, many migrant farmworkers must depend on visitors in order to receive essential services such as education of their children, medical help and legal assistance. DuFresne and McDonnell, The Migrant LaborCamps: Enclaves of Isolation In Our Midst, 40 Fordham L Rev 279 (1971).
In our view, in light of the above factors, a lease provision prohibiting access by migrants to essential services would constitute an unconscionable contract provision. State v Avco Financial Services,50 N.Y.2d 383, 389 (1980). Such a provision would reflect "`an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party'".Avco, supra, 50 N.Y.2d at 389. Such a restrictive lease provision would be grossly one sided, provide no alternative access to service providers[1]
and be unreasonably favorable to the owners of the labor camps.State v Avco Financial Serv., supra 50 N.Y.2d 383; J. Calamari J. Perillo, Contracts, §§ 9-40 (2d ed 1977).
By employing migrant farmworkers and offering them free or rented housing on their property, the farmer's rights to that property are not absolute. In permitting access to representatives of a legal services organization which sought to inform migrant farmworkers of their legal rights, the Federal District Court for the Southern District stated:
 "Ownership does not always mean absolute dominion. The more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by those who use it."
Mid-Hudson Legal Services, Inc. v G. U., Inc., 437 F. Supp. 60, 62
quoting Marsh v State of Alabama, 326 U.S. 501, 506 (1946). See also,Franceschina v Morgan; Ill. Migrant Council v Campbell Soup Co.,519 F.2d 391 (7th Cir 1975).
Ownership of real property does not include the right to bar access to services available to migrant workers. Folgueras, supra,331 F Supp at 623. "As a matter of property law, the ownership of a labor camp does not entail the right to cut off the fundamental rights of those who live in the camp." Folgueras, supra, 331 F Supp at 623.
 "`The quest is for a fair adjustment of the competing needs of the parties, in the light of the realities of the relationship between the migrant worker and the operator of the housing facility.
 "`Thus approaching the case, we find it unthinkable that the farmer-employer can assert a right to isolate the migrant worker in any respect significant for the worker's well-being. The farmer, of course, is entitled to pursue his farming activities without interference, and this defendants readily concede. But we see no legitimate need for a right in the farmer to deny the worker the opportunity for aid available from federal, State, or local services, or from recognized charitable groups seeking to assist him. Hence representatives of these agencies and organizations may enter upon the premises to seek out the worker at his living quarters. So, too, the migrant worker must be allowed to receive visitors there of his own choice, so long as there is no behavior hurtful to others, and members of the press may not be denied reasonable access to workers who do not object to seeing them.'"
Folgueras, supra, 331 F Supp at 623-624.
In balancing the interests of private property rights of migrant labor camp owners and the fundamental rights of migrant farmworkers, the decision of the United States Court of Appeals for the Second Circuit inN.L.R.B. v S H Grossinger's Inc., 372 F.2d 26 (2d Cir 1967) is instructive. In that case, the Second Circuit found that union organizers should be permitted access to visit employees on the hotel's premises where the employees live and work since the workers could not be reached by any other means practically available to the organizers and there was no detriment to the property interests of the hotel owners if the visit took place in a reasonable manner. Id., 372 F.2d at 30. Similarly, while the farmer or grower is unquestionably entitled to conduct farming business without interference, his private property rights cannot isolate the migrant farmworker and deny farmworkers aid from persons seeking to assist them. The owners of migrant labor camps are not prejudiced by permitting access to farmworkers residing in those camps during non-working hours.
The property rights of a migrant camp owner do not include the right to prevent access to his camp to guests of migrant workers or to persons working for any governmental or private agency whose primary concern is the health and welfare of migrant workers. Folgueras, supra,331 F Supp at 624. Criminal prosecution of a visitor to a migrant labor camp for trespass, where the visitor is visiting during non-working hours and without disruption to the farmer's business operations, would not be proper.
We conclude that migrant farmworkers have the right to be visited in labor camps where they reside by doctors, lawyers, labor union representatives, the clergy or other persons during non-working hours without interference by their employers or owners of the labor camp.
[1] Four State Attorneys General, from the States of Maryland, Virginia, Florida and Michigan, however, have issued opinions finding that migrant farmworkers have the legal right to receive guests in their living quarters though the state laws did not expressly authorize access.
[1] Various State and Federal laws encourage service providers, such as doctors and legal service attorneys, to provide assistance to migrant farmworkers. See, New York State Sanitary Code for Migrant Labor Camps, 10 NYCRR Part 15; Minimum Wage Standards for Farmworkers, Article 19-A of the New York Labor Law; Agricultural Worker Protection Act,29 U.S.C. § 1801 et seq.; Migrant Health Service,42 U.S.C. § 300e-14a; Title III-B of the Economic Opportunity Act of 1964, 41 U.S.C. § 286, et seq. It would be against public policy to refuse access to persons who could assist migrant farmworkers in attaining the rights and benefits they are entitled to under the law.