[No. 42339.   En Banc.   May 24, 1973.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL J. FOX *et al.*, *Appellants*:

*Charles E. Ehlert* and *Mario Obledo,* for appellants.

*Arthur R. Eggers, Prosecuting Attorney,* and *Jerry A. Votendahl, Deputy,* for respondent.

*Llewelyn G. Pritchard, William H. Neukom, Robert W. Meserve, McNeill Smith, Eugene M. Moen, Mayo H. Stiegler, Croil Anderson, Jackson, Goldmark, Bender, Anderson, Whelan, Brotman & Leed, Kevin Carey,* and *Lawrence J. Sherman,* amici curiae.

WRIGHT, J.—This action is an appeal from a conviction for trespass, a misdemeanor. Appellants were convicted in district court in Walla Walla County and fined $25 each. They appealed to the Walla Walla County Superior Court and were again convicted after a trial to the court without a jury and received the same fine. Following the conviction in superior court, appellants appealed directly to the Supreme Court.

Appellant Michael J. Fox is an attorney at law. He was employed full time by the Seattle-King County Legal Aid Bureau, Inc. In that capacity he rendered legal services to persons who were unable to pay for such services. He charged the client nothing and was compensated only by his salary.

Appellant Guadalupe M. Gamboa is an organizer employed by the United Farm Workers Organizing Committee, AFL-CIO, a labor organization for migrant farm workers.

Appellants will hereinafter be referred to as "Fox" and "Gamboa". Rogers Walla Walla, Inc. is a corporation engaged in farming, and will hereinafter be referred to as "Rogers".

Rogers leases a tract of land about 3 miles south of Walla Walla, known as Rogers Labor Camp. In the camp in June of 1971, were housed about 220 male migrant workers who had come from Texas to work harvesting asparagus. Most of the workers spoke Spanish and few, if any, had any significant knowledge of English.

The workers were employed by contract for a season of 6 to 8 weeks. They lived in the camp and paid $2.75 per day for board and room. Located within the camp area are the company office, a mess hall, store, recreation room, laundry facility, shop, shed to house the company's farm machinery, and a house occupied by a tenant who was not one of the migrant workers.

The only telephone in the camp was located in the company office. Any worker desiring to use the telephone had to seek permission. The workers were transported to and from the fields in company trucks.

On June 15, 1971, Gamboa and other union representatives went to the camp and talked to a number of the workers, including one Alfonso Romo. Gamboa had a discussion with Romo about the latter's legal rights under his employment contract. Gamboa suggested that Romo talk to an attorney, and Romo agreed. Several of the workers asked Gamboa to return as soon as possible because they wanted to have matters about a bonus and other problems clarified before their return to Texas. On that date, Gamboa and at least one other union representative identified themselves at the company office and talked to a Mr. Mendoza, the company supervisor on duty. They had no difficulty and were not asked to leave.

On June 16, 1971, Gamboa went to Seattle and contacted Fox, informing him the workers were desirous of having a lawyer come to the camp. Fox agreed to go and proceeded to read the contract and other documents which were furnished him. He also read applicable case law.

On Saturday, June 19, 1971, both Fox and Gamboa entered the property leased by Rogers at about 5:10 p.m. That was at a time when it was daylight, but was not

during working hours. Appellants were accompanied by Irwin Nash, a journalist and photographer, and by Sandy O'Brien and Patricia Cope, two young ladies who were employed by the union during the summer months. They were in an automobile belonging to Fox.

Upon turning off the public road, appellants and the other occupants of the automobile went past a "No Trespassing" sign and proceeded up a dirt road between an eighth and a quarter of a mile to the camp. There they were met by a Mr. Bernard J. Lang, who was a supervisory employee of Rogers. Lang also appears to have held a commission as a special deputy sheriff.

Mr. Lang met the automobile, noted the license number, and conversed with Gamboa. Gamboa said he wanted to talk to some people and walked away. Fox showed Lang his Washington State Bar Association card and stated he was an attorney and had come to see some people who had asked to see an attorney.

There was some argument between Lang and Fox, in which argument Lang asked Fox if he had the permission of the company to be present, and whom he wished to see. Fox stated he did not need permission to be present and was not required to state whom he wished to see. He cited some case law on the matter.

After some discussion, Lang called his company superior and was told that if the appellants did not have permission from the company to be present, they would have to leave. Lang communicated this to Fox, who continued to remain on the premises. Lang then called the sheriff's office. Two deputy sheriffs came and told Fox and Gamboa to leave. The others, Miss O'Brien, Miss Cope and Mr. Nash, left the premises. The arrest of Fox and Gamboa soon followed.

In view of our disposition of this case, it will not be necessary to consider all of appellants' contentions. The workers paid for the right to live in the camp and enjoyed the status of tenants. *Franceschina v. Morgan*, 346 F. Supp. 833 (S.D. Ind. 1972). As such, they had the right to invite

others onto the premises. *Konick v. Champneys,* 108 Wash. 35, 183 P. 75 (1919).

The other and more important issues are whether Fox, as an attorney, had a right to go where he could consult with potential clients, and whether Gamboa, as a labor organizer, had a right to go where he could contact workers.

█ With regard to Fox, the cases are many in which it has been held that First and Fourteenth Amendment rights include the right to counsel. *Brotherhood of R.R. Trainmen v. Virginia ex rel. Virginia State Bar,* 377 U.S. 1, 12 L. Ed. 2d 89, 84 S. Ct. 1113, 11 A.L.R.3d 1196 (1964); *NAACP v. Button,* 371 U.S. 415, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963); *United Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n,* 389 U.S. 217, 19 L. Ed. 2d 426, 88 S. Ct. 353 (1967).

In the present case Fox merely remained on the Rogers premises and waited for Gamboa to find the men who wished to talk to him. Under such circumstances, Fox had a lawful right to be there.

█ With regard to Gamboa, the law is clear that a union organizer has a right to go where necessary to meet with workers, as long as his exercise of that right is reasonable. The right here was exercised outside of working hours and during the daytime.

The law relative to the right of labor organizers is set forth in *Francheschina v. Morgan, supra.* In addition to numerous cases from the federal courts and from other states, there is one case in Washington worthy of note, *Kimbel v. Lumber & Saw Mill Workers Union 2575,* 189 Wash. 416, 65 P.2d 1066 (1937). Therein at page 419, we said: "Under the law, workmen have the right to organize and form unions." Following that statement is a quotation from a statute which is now codified as RCW 49.36.010:

> Unions legalized. It shall be lawful for working men and women to organize themselves into, or carry on labor unions for the purpose of lessening the hours of labor or increasing the wages or bettering the conditions of the members of such organizations; or carry out their legitimate purposes *by any lawful means.*

(Italics ours.) Another statute which is pertinent to the problem is RCW 49.36.030, which reads:

Prosecutions prohibited. No person shall be indicted, prosecuted, or tried in any court of this state for entering into or carrying on any lawful arrangement, agreement, or combination between themselves made with a view of lessening the number of hours of labor or increasing wages or bettering the conditions of working men and women, *or for any lawful act done in pursuance thereof.*

(Italics ours.)

Upon the authority of modern constitutional, decisional and statutory law, we hold the appellants herein had a lawful right to be at the labor camp at the time they were arrested. They committed no crime and therefore the judgment of conviction is hereby reversed and the charges against appellants are dismissed.

HALE, C.J., FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, and UTTER, JJ., concur.

Petition for rehearing denied July 17, 1973.