[No. 16818-9-II.   Division Two.   August 18, 1995.]

UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 367, *Appellant*, v. CANNED FOODS, INC., ET AL., *Respondents*.

*John F. Young*, for appellant.

*Eric S. Nelson, City Attorney*, for respondent City of Aberdeen.

*Arthur A. Blauvelt III* and *Ingram Zelasko & Goodwin*, for respondents Canned Foods, Inc., and Carl and Debby Bland.

MORGAN, J. — United Food & Commercial Workers Union Local 367 (union) appeals the superior court's denial of an injunction. We affirm.

Carl and Debbie Bland operate a food store known as Canned Foods Grocery Outlet. They employ nonunion workers.

The store has a parking lot. The record does not show

the size of the parking lot, but according to counsel at oral argument, it is of normal or average size for a parking lot adjacent to a store that is not part of a shopping mall.

Before this dispute arose, the Blands had a policy that prohibited solicitation on the premises. They manifested their policy by a sign in the front window of the store. They have continued their policy since this dispute arose.

On October 6, 1992, the president of the union sent the Blands a letter. It stated:

> We wish to advise you that our Union intends to engage in an advertising campaign to inform the public that your store is non-union. The exclusive purpose of this advertising campaign is to persuade the general public not to patronize your store and to urge them to shop in stores in which the employees enjoy prevailing conditions of employment afforded by union representation.
>
> We do not claim at this time to represent a majority of the employees of your store in a unit appropriate for collective bargaining, nor is it any part of the purpose of our advertising campaign to secure a union contract or representational authority for these employees. In fact, under present circumstances our union would refuse to enter into any such contract. We are advising the Central Labor Council, the Teamsters organization, and any other labor organizations, on request, that our advertising campaign is intended to have no effect on pickups or deliveries or the performance of services.
>
> Should you believe that any of our advertising activities are not in accordance with this letter, please advise me immediately so that such corrective action as may be appropriate can be taken.[1]

On October 14, 1992, picketers appeared in the store's parking lot. The picketers were not employees of the store; according to a newspaper article that forms part of the record on appeal,[2] they were persons hired by the union through an employment security service.

---

[1]Clerk's Papers at 7.

[2]Clerk's Papers at 73. Although the article is hearsay, nothing in the record indicates that the union made an objection before the trial court. *See Smith v. Showalter*, 47 Wn. App. 245, 248, 734 P.2d 928 (1987).

The Blands called the police, and the police told the picketers they would be arrested for trespass if they refused to leave the privately owned parking lot. The picketers moved onto public property at the perimeter of the parking lot, where they continue to picket intermittently. The union says this location does not allow the picketers to communicate effectively with the store's customers, who pass in cars.

The union chose not to complain to the National Labor Relations Board (NLRB). Rather, on November 13, 1992, it sued in the superior court for an injunction prohibiting the exclusion of picketers from the parking lot. The superior court denied the injunction, relying on *Lechmere, Inc. v. NLRB,* 502 U.S. 527, 112 S. Ct. 841, 117 L. Ed. 2d 79 (1992). The union now appeals.

A party who seeks an injunction must show, among other things, a clear legal or equitable right. *Washington Fed'n of State Employees, Council 28 v. State,* 99 Wn.2d 878, 887, 665 P.2d 1337 (1983); *Isthmian S.S. Co. v. National Marine Engineers' Beneficial Ass'n,* 41 Wn.2d 106, 117, 247 P.2d 549 (1952). Here, the union claims it has shown such a right.

Generally, state trespass law allows the possessor of private property to eject persons present thereon without permission. RCW 9A.52.080; *Nessman v. Sumpter,* 27 Wn. App. 18, 21-22, 615 P.2d 522, *review denied,* 94 Wn.2d 1021 (1980). Thus, RCW 9A.52.080 provides:

> A person is guilty of criminal trespass in the second degree if he knowingly enters or remains unlawfully in or upon premises of another under circumstances not constituting criminal trespass in the first degree.

*See also* RCW 9A.52.070 (first degree trespass).

In effect, the union claims that state labor law creates an exception to this statute, and that federal labor law

does also. We consider state law first and federal law second.

## I

In claiming that state labor law creates an exception to the state trespass laws, the union does not rely on a "constitutional right to picket on the employer's property."[3] *See Southcenter Joint Venture v. National Democratic Policy Comm.*, 113 Wn.2d 413, 780 P.2d 1282 (1989). Rather, it relies exclusively on statutory and decisional state law, saying that "Washington's labor law should form the foundation for permitting union access to the employer's property to carry out the legitimate union activity of informational picketing."[4] More specifically, it relies on RCW 49.36.010, *State v. Fox*, 82 Wn.2d 289, 510 P.2d 230 (1973), *cert. denied*, 414 U.S. 1130 (1974), and RCW 49.32.020.

## A

RCW 49.36.010 can be dealt with summarily. It protects the right to organize and carry on labor unions, and to "carry out their legitimate purposes by any lawful means."[5] But it does not define "lawful means." Therefore, it does not address the question raised here, which is whether the union was using "lawful means" (i.e., engaging in protected activity) when it placed picketers in the privately owned parking lot of the store.

## B

■ To comprehend *State v. Fox*, 82 Wn.2d 289, we start by examining federal law. Generally, federal law gives employee union agents the right to engage in union activ-

---

[3]Br. of Appellant at 25.

[4]Br. of Appellant at 25.

[5]RCW 49.36.010 provides: "It shall be lawful for working men and women to organize themselves into, or carry on labor unions for the purpose of lessening the hours of labor or increasing the wages or bettering the conditions of the members of such organizations; or carry out their legitimate purposes by any lawful means."

ity on the employer's premises over the employer's objection. *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 65 S. Ct. 982, 89 L. Ed. 1372 (1945). Generally, however, it does not give this right to nonemployee union agents. *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 76 S. Ct. 679, 100 L. Ed. 975 (1956). The key distinction is whether the person engaging in union activity is trespassing on the employer's property. As the United States Supreme Court has explained:

> In *Republic Aviation* the Court upheld the Board's ruling that an employer may not prohibit its employees from distributing union organizational literature in nonworking areas of its industrial property during nonworking time, absent a showing by the employer that a ban is necessary to maintain plant discipline or production. This ruling obtained even though the employees had not shown that distribution off the employer's property would be ineffective. 324 U.S. at 798-799, 801; 65 S.Ct. at 985-86, 987. In the Court's view, the Board had reached an acceptable "adjustment between the undisputed right of self-organization assured to employees under the Wagner Act and the equally undisputed right of employers to maintain discipline in their establishments." Id., 324 at 797-798, 65 S.Ct. at 985. [Footnote omitted.]

> In *Babcock & Wilcox*, on the other hand, nonemployees sought to enter an employer's property to distribute union organizational literature. The Board applied the rule of *Republic Aviation* in this situation, but the Court held that there is a distinction "of substance" between "rules of law applicable to employees and those applicable to nonemployees." 351 U.S. at 113, 76 S.Ct. at 684. The difference was that the nonemployees in *Babcock & Wilcox* sought to trespass on the employer's property, whereas the employees in *Republic Aviation* did not. Striking a balance between § 7 organizational rights and an employer's right to keep strangers from entering on its property, the Court held that the employer in *Babcock & Wilcox* was entitled to prevent "nonemployee distribution of union literature [on its property] if reasonable efforts by the union through other available channels of communication will enable it to reach the employees with its message . . . ." Id., at 112, 76 S.Ct. at 684. The Court recently has emphasized the distinction between the two cases: "A wholly different balance was struck when the organizational activity was carried on by employees already rightfully on the

employer's property, since the employer's management interests rather than his property interests were there involved." *Hudgens v. NLRB*, [424 U.S. 507, 521-22 n.10 (1976)]; *see also Central Hardware Co. v. NLRB* [407 U.S. 539, 543-545 (1972)].

*Eastex, Inc. v. NLRB*, 437 U.S. 556, 570-72, 98 S. Ct. 2505, 57 L. Ed. 2d 428 (1978).

The *Babcock* rule was further explained in *Lechmere*. There, a union wanted to organize the employees of a store. It ran a full-page newspaper ad but drew little response. Using nonemployees of the store, it then entered the store's privately owned parking lot and began to place handbills on cars located where employees usually parked. When the store's manager learned of this activity, he objected and asked those participating to leave the store's property. They relocated to public property at the perimeter of the parking lot, and the union then filed an unfair labor practice complaint with the NLRB. The NLRB found in favor of the union, but the United States Supreme Court reversed. The Court said:

> Babcock's teaching is straightforward: § 7 simply does not protect nonemployee union organizers except in the rare case where "the inaccessibility of employees makes ineffective the reasonable attempts by nonemployees to communicate with them through the usual channels," 351 U.S. at 112, 76 S.Ct. at 684.

502 U.S. at 537. Regarding the scope of *Lechmere*'s inaccessibility doctrine, the Court stated:

> [T]he exception to *Babcock*'s rule is a narrow one. It does not apply wherever nontrespassory access to employees may be cumbersome or less-than-ideally effective, but only where "the *location of a plant and the living quarters of the employees place the employees* beyond the *reach* of reasonable union efforts to communicate with them," 351 U.S. at 113, 76 S.Ct. at 684 (emphasis added [by the United States Supreme Court]). Classic examples include logging camps, mining camps, and mountain resort hotels.

502 U.S. at 539 (citations omitted).

With this background, we turn to *State v. Fox*, 82 Wn.2d 289. There, about 220 migrant workers lived in a privately owned labor camp about three miles outside Walla Walla. They were transported to and from work in company trucks, and they had no phone except one in the company office. They asked a union organizer to visit them and explain their rights. He tried to do so, but was ordered to leave by the employer and the sheriff. When he refused to comply, he was arrested for trespass and convicted in the superior court. The Washington Supreme Court held that the organizer had "a right to go where necessary to meet with workers, as long as his exercise of that right is reasonable." 82 Wn.2d at 293. It further held that the organizer's exercise of the right was reasonable where he went to the camp during nonworking hours, during the daytime, and at the invitation of the people who lived there. Thus, it reversed the trespass conviction.

*Fox* is the state analog of the exception described in *Babcock* and *Lechmere*. It recognizes that state law protects nonemployee union organizers where "the *location of a plant and the living quarters of the employees* place the employees beyond the reach of reasonable union efforts to communicate with them." *Lechmere*, 502 U.S. at 539 (quoting *Babcock*, 351 U.S. at 113) (emphasis in original). Migrant labor camps, like logging camps, mining camps, and mountain resort hotels, are classic examples. *Fox* does not hold that nonemployee union agents have or do not have a right of access, under state law, to the privately owned parking lot of a grocery store. *Fox* does not speak to that question, for its facts did not involve such a store.

## C

We come now to RCW 49.32.020. It might have the same meaning as *Babcock* and *Lechmere*—its wording is similar

to the NLRA,[6] and federal law can be persuasive though not controlling when similar to state law. *Bravo v. Dolson Cos.*, 125 Wn.2d 745, 755, 888 P.2d 147 (NLRA and RCW 49.32.020); *Green River Community College Dist. 10 v. Higher Educ. Personnel Bd.*, 107 Wn.2d 427, 432, 730 P.2d 653 (1986) (NLRA and RCW 41.56); *State ex. rel. Washington Fed'n of State Employees v. Board of Trustees*, 93 Wn.2d 60, 67-68, 605 P.2d 1252 (1980) (NLRA and RCW 41.56). On the other hand, it might have a different meaning—its wording is not identical to the NLRA, and, even if it were, the Washington State Supreme Court is not bound to follow the United States Supreme Court on matters of state law. Either way, the matter should not be decided without adequate briefing from the parties. *State v. Olson*, 126 Wn.2d 315, 319, 893 P.2d 629 (1995). Here, the parties did not cite RCW 49.32.020 to the trial court, and they even omitted it from their appellate briefs. The union first raised it at oral argument in this court, and even then without analysis of the particular wording. Accordingly, we decline to decide whether RCW 49.32.020 modifies state trespass law in such a way as to vest nonemployee union agents with a right of access to private property that exceeds, or is broader than, the right of access provided by federal law.

## II

In addition to claiming that state labor law creates an exception to state trespass law, the union seems to claim that federal labor law overrides or creates an exception to state trespass law. We consider this claim to the extent

---

[6]RCW 49.32.020 provides in part that "it is necessary . . . that [the individual unorganized worker] shall be free from interference, restraint, or coercion of employers of labor, or their agents . . . in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protections. . . ." Section 7 of the NLRA provides that employees "shall have the right to self-organization . . . and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8 of the NLRA states that it "shall be an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." 29 U.S.C. § 158(a)(1).

necessary to decide whether the trial court properly denied an injunction under state law.[7]

## A

The union argues that *Lechmere* does not apply when its nonemployee agents are trying to reach customers as opposed to employees. It says that "*Lechmere* applies only to non-employee organizational picketers,"[8] and that the picketers in this case were "informational" as opposed to "organizational." Later in its brief, it similarly says that Lechmere "leaves undisturbed the string of cases where the target of the picketing was the customer and not the employee."[9]

Even if correct, this argument does not aid the union. According to *Babcock* and *Lechmere*, federal law does not allow a nonemployee union agent to remain on an employer's property under circumstances that violate state trespass law, except in situations involving inaccessibility of the sort set forth in *Lechmere*. If *Lechmere* does not apply, its exception does not apply, and a nonemployee union agent has no right to remain on private property under circumstances contrary to state trespass law.

## B

The union also argues that "*Lechmere*'s application to the present case would still allow picketing because there were no reasonable alternative means of communica-

---

[7]We do not decide whether the union engaged in, or sought to engage in, protected or prohibited activity as a factual matter under federal law. Such determinations are within the exclusive jurisdiction of the NLRB. 29 U.S.C. § 160 (granting power to NLRB to determine unfair labor practices); *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 197-207, 98 S. Ct. 1745, 56 L. Ed. 2d 209 (1978) (state court may determine state trespass issues). Incidentally, neither the union nor the store raises a jurisdictional issue in this appeal.

[8]Br. of Appellant at 8.

[9]Br. of Appellant at 17.

tion."[10] In *Lechmere* itself, however, the United States Supreme Court ruled to the contrary on facts very similar to those here. The Ninth Circuit has also ruled to the contrary on facts very similar to those here, *Sparks Nugget, Inc. v. NLRB*, 968 F.2d 991 (9th Cir. 1992),[11] as has the NLRB in *Makro, Inc.*, 316 NLRB No. 24, 148 L.R.R.M. (BNA) 1116, 1995 WL 35600 (N.L.R.B. Jan. 25, 1995), and Leslie Homes Inc., 316 NLRB No. 29, 148 L.R.R.M (BNA) 1105, 1995 WL 35604 (N.L.R.B. Jan. 25, 1995). Analogizing to these authorities, we hold that Lechmere does not vest the union with the right to a state court injunction.

The parties' remaining arguments are meritless or need not be reached. We conclude that the union has not established the clear legal or equitable right needed for an injunction, and that the trial court did not err by denying an injunction in this case.

The superior court's judgment is affirmed.

---

[10]Br. of Appellant at 18.

[11]In *Sparks Nugget*, the employer operated a hotel. Using nonemployees of the hotel, the union began to picket and handbill on the public street in front of the hotel's entrance, "and on the private driveway around the back where many customers enter the hotel." 968 F.2d at 996-97. The hotel evicted the protestors from its property, forcing them to picket on the public street. The Ninth Circuit said:

> Given the narrow construction of the exception to the employer's private property rights articulated in *Lechmere*, we must hold that the exception applies when the nonemployee picketers are trying to reach employees, not customers. Here, the pickets and handbills were aimed at the general public, not the employees. Therefore, the inaccessibility exception to the rule that an employer need not accommodate nonemployee organizers, does not apply.

> Moreover, even if the [*Lechmere*] exception were to apply, the intended audience—the general public—could be reached in other ways. The hotel is not the equivalent of an isolated mining camp—the picketers could stand at the front entrance and the perimeter of the property, they could communicate through advertisements or by sending mailings to tour companies, or they could communicate through billboarding. As in *Lechmere*, we must hold that because the targets of the union protest "do not reside on [the employer's] property, they are presumptively not beyond the reach of the union's message." *Id.*, 112 S. Ct. at 849 (quotation omitted).

968 F.2d at 997-98. Because *Lechmere* did not apply, or was not met, the court held that the hotel could exclude pickets from its property.

SEINFELD, C.J., and WIGGINS, J., concur.